UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WILLIS J. CARTER,

                          Plaintiff,

   -against-                                              1:15-CV-1256 (LEK)

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,[1]

                          Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

This case has proceeded in accordance with General Order 18, which establishes the procedures applicable to appeals from denials of Social Security benefits. Both parties have filed briefs. Dkt. Nos. 24 ("Plaintiff's Brief"), 25 ("Defendant's Brief"). For the following reasons, the decision of the Social Security Administration ("SSA") is vacated and this case is remanded for further proceedings.

**II.    BACKGROUND**

    **A. Factual Background**

Plaintiff Willis J. Carter was born January 1, 1965. Dkt. No. 18 ("Record") at 34. Carter

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the SSA. She replaces Carolyn W. Colvin, in her capacity as the Acting Commissioner, as defendant in this action. Fed. R. Civ. P. 25(d).

claims that he became disabled on April 1, 2014,[2] as a result of back and wrist injuries. Id. at 53, 176.

*1. Work History*

Carter received his GED in November 1983. Id. at 177. There is no evidence in the record of Carter's activities from November 1983 to February 1997. From February 1997 to January 2007, Carter worked as a counselor in a group home. Id. at 286. From December 2005 to January 2007, Carter appears to have also worked as a bus driver. Id. Further, from January 2007 to December 2008, Carter worked as a bus cleaner. Id. From December 2008 to January 2013, Carter was a commercial driver for the Capital District Transit Authority ("CDTA") Id. After leaving CDTA, Carter briefly drove for Advantage Transit. Id. at 31.

Next, Carter worked for Risa Group, driving a medical transport vehicle. Id. at 34. Carter left this job shortly after starting, claiming he could not handle the stress the job put on his back. Id. After leaving this job, Carter briefly worked as a driver for two moving companies. Id. at 35. Carter left both of these jobs because they required him to do heavy lifting. Id. The last time Carter was employed was August 2013. Id. at 36. Carter claims he continued to look for work after August 2013, but could not find work as a driver that did not cause him back pain. Id. at 38. Carter collected unemployment benefits through early 2014. Id. at 52.

*2. Medical History*

In 1991, Carter was injured in a car accident in which he ruptured a disk in his lower

---

[2] When Carter initially applied for Social Security benefits, he listed April 1, 2013, as the disability onset date. R. at 13. Carter amended the onset date to April 1, 2014, during the administrative hearing on June 3, 2015. Id. at 52.

back, fractured his coccyx, and broke his right wrist. Id. at 353. As a result, Carter underwent a L4–L5 fusion. Id.

In March 2011, Dr. Gerald Schynoll examined Carter for back pain that had begun over the previous two or three weeks while he was doing dishes. Id. at 357. Dr. Schynoll concluded that Carter was suffering from musculoskeletal low back pain. Id. He instructed Carter to do back exercises and take over-the-counter pain medicine. Id.

In July 2012, Dr. Schynoll examined Carter again. Id. at 353. This time, Carter complained of radiating lumbar pain after lifting a wheelchair at work. Id. Carter was out of work for about six months following the injury. Id. On January 23, 2013, he returned to Dr. Schynoll, claiming his back was still bothering him from the July 2012 injury. Id.

On May 7, 2014, Carter went to the emergency room ("ER") complaining of sharp back pain radiating to his left buttock with slight numbness in his left leg. Id. at 326. The pain originated from a sneezing and coughing fit Carter had suffered earlier. Id. Upon examination, Dr. Robert Holterman noted muscle spasms, veterbral tenderness, and tenderness in L3–L4 on palpation. Id. at 329. Additionally, the doctor found full range of motion in the extremities with 5/5 bilateral strength. Id. The doctor also noted that Carter had a normal gait. Id.

On May 11, 2014, Carter returned to the ER complaining of increasing back pain. Id. at 330. Upon examination, Dr. Holterman noted that Carter had minimal deformity in his back, full range of motion in his extremities, and no neurological deficits. Id.

On June 4, 2014, Dr. Kautilya Puri, serving as a consultative examiner for the SSA, examined Carter. Id. at 335. Dr. Puri made several relevant findings. First, she noted that Carter "appeared to be in no acute distress." Id. at 336. Dr. Puri did notice that his gait appeared slow

and that he used a cane, but observed that his gait was unaffected by the use of his cane. Id. Accordingly, she determined the cane was not necessary. Id. Dr. Puri also noted that Carter needed no help changing for the exam or getting on and off the exam table. Id. When examining Carter's back, Dr. Puri noted that he had mild local tenderness but had full cervical flexion and full rotary movement bilaterally. Id. at 336–37. Additionally, Carter had full range of motion of his shoulders, elbows, and wrists. Id. at 337. Lastly, Dr. Puri noted that Carter's gross and fine motor dexterity was intact with 5/5 grip strength bilaterally. Id. Dr. Puri concluded that Carter had (1) no objective limitations to fine or gross motor activity, his gait, or other activities of daily living, and (2) mild to moderate limitations for squatting, bending, stooping, kneeling, and lifting weights. Id.

On June 26, 2014, Dr. J. David Abraham examined Carter and found that he had marked restriction of his lumbar spine in flexion and mild back spasms with no neurological deficits. Id. at 340. Dr. Abraham also noted that he thought Carter had a fused L5–S1 with degenerative changes at L4–L5. Id. Further, Dr. Abraham found that Carter had significant carpometacapal ("CMC") arthritis in his hand, and he had difficulty doing power grip activities on a repetitive basis. Id. Based on his findings, Dr. Abraham recommended that Carter stay out of work "at this time" and undergo an MRI to determine if there were any further disc problems. Id. Dr. Abraham also referred Carter to Dr. Christopher DeCamp to evaluate Carter's wrist pain. Id.

On September 22, 2014, Dr. Abraham received the results of Carter's MRI exam, which highlighted varying degrees of disc degeneration from L3–L5. Id. at 342. Additionally, L4–L5 showed evidence of chronic pain. Id. at 342. On October 2, 2014, Dr. Abraham reevaluated Carter and found that he had "significant degenerative changes and pathology above the level of

4

his previous fusion." Id. at 344. Accordingly, Dr. Abraham concluded that Carter was 100% disabled and unable to return to work "at this time." Id.

On October 10, 2014, Dr. Decamp evaluated Carter and found definite pain and crepitus in the CMC joint as well as crepitus and abnormalities in the metacarpophalangeal ("MCP") joint. Id. at 346. An MRI further outlined a chronic tearing of the ulnar collateral ligament of the left thumb MCP joint as well as moderate to severe CMC arthritis. Id. at 350.

### 3. *Subjective Description of Pain and Symptoms*

Carter claims that he first suffered back pain as a result of the 1991 surgery. Id. at 283. Carter suffers from a dull throbbing pain in his lower back and hips, which becomes stabbing if he sits for too long. Id. Accordingly, Carter complains that he cannot sit for too long because he needs to get up to prevent stiffness and pain. Id. at 279. He claims the pain is constant and that he is always trying to shift his weight or position to avoid the pain. Id. at 284. He says the pain started to affect his ability to do daily activities in March 2014. Id. at 283. Carter further claims that he has to sit when he showers and puts his pants on. Id. at 275. Further, Carter has to take frequent breaks when he is doing daily activities such as laundry and dishes. Id. at 278. Carter asserts he needs help carrying laundry baskets or heavy items, and that he can walk only one or two blocks before he needs to take a break and must rest for fifteen to twenty minutes before continuing. Id. at 278, 281. Carter uses a cane that he bought from a medical store to help him walk, id., and takes pain medication daily, id. at 284.

**B. Procedural History**

On March 10, 2014, Carter filed an application for disability benefits, alleging disability beginning January 3, 2013. Id. at 13. His claim was initially denied on June 12, 2014. Id. After

5

the denial, Carter requested a hearing. Id. On June 3, 2015, Administrative Law Judge ("ALJ") Paul Kelly held a video hearing during which Carter agreed to move the alleged onset date to April 1, 2014. Id. at 52.

On June 8, 2015, ALJ Kelly issued a decision denying Carter's claim for disability benefits. Id. at 20. ALJ Kelly undertook the five-step analysis to determine whether Carter was disabled. Id. at 15–20. First, ALJ Kelly found that Carter had not engaged in substantial gainful employment since April 1, 2014. Id. at 15. Second, evaluating Carter's medical history, ALJ Kelly determined that he suffered from several severe impairments: (1) status post lumbar fusion at the L4–L5 disc level, (2) degenerative disc diseases of the lumbar spine, and (3) degenerative joint diseases of the left thumb. Id. Third, ALJ Kelly concluded that Carter did not have an impairment or combination of impairments that meets or is equivalent to the severity of one of the listed impairments in 20 C.F.R. pt. 404(P), app. 1. Id. at 16.

Fourth, ALJ Kelly determined Carter's residual functional capacity ("RFC"). Id. In addressing Carter's RFC, ALJ Kelly engaged in the two-step analysis for analyzing Carter's testimony about his pain and symptoms. Id. at 17. ALJ Kelly concluded that while Carter's medically determinable impairments could reasonably cause his alleged symptoms, his testimony about the intensity, persistence, and limiting effects of the symptoms was not entirely credible. Id. at 18. In making this determination, ALJ Kelly relied heavily on the findings of the consultative examiner, Dr. Puri. Id. Dr. Puri found that Carter had no objective limitations to fine or gross motor activity or to the performance of daily activities, but did experience moderate limitations in squatting, bending, stooping, kneeling, and lifting weights. Id.

6

ALJ Kelly gave significant weight to Dr. Puri's opinion because he personally examined Carter and his "opinion [was] consistent with his findings during the examination." Id. Further, ALJ Kelly gave little weight to the opinion of the treating physician, Dr. Abraham, for several reasons. Id. First ALJ Kelly gave little weight to Dr. Abraham's statement that Carter was "100% disabled" because "disability is an opinion reserved to the commissioner." Id. Further, ALJ Kelly noted that Dr. Abraham's opinion was inconsistent with the overall record. Id. Lastly, ALJ Kelly concluded that Dr. Abraham's opinion was vague and unpersuasive because he did not provide a function-by- function analysis or articulate a more specific time frame for when Carter could not work than "at this time." Id.

After determining Carter's RFC, ALJ Kelly considered the work Carter was capable of performing. Id. at 19. Relying on the testimony of vocational expert Margaret Heck, ALJ Kelly concluded Carter could not perform his past work as a bus driver. Id. Next, ALJ Carter determined that based on Carter's age, education, work experience, and RFC, there was other work available that Carter could perform. Id. Accordingly, ALJ Kelly concluded that Carter was not disabled and denied his application for social security disability benefits. Id. at 20.

On June 15, 2015, Carter requested that the SSA Appeals Council review the ALJ's decision. Id. at 8. Carter attached new evidence with this request, which included treatment records from Singing River Emergency Department from April 14, 2015 through June 18, 2015. Id. On August 19, 2015, the Appeals Council denied Carter's request for review, concluding that despite the new evidence and Carter's complaints about the ALJ's decision, there was no basis for reviewing the decision. Id. at 1–2.

### C. This Appeal

On October 21, 2015, Carter initiated this appeal by filing his complaint. Dkt. No. 1 ("Complaint"). Carter advances three reasons to reverse ALJ Kelly's decision. First, Carter argues that ALJ Kelly committed legal error in his RFC determination because he lacked adequate basis for discounting Carter's testimony. Pl.'s Br. at 14. Second, he argues that the RFC determination was not supported by substantial evidence. Id. Third, Carter argues that ALJ Kelly's decision should be remanded because of new evidence. Id. at 12.

## III. LEGAL STANDARD

### A. Standard Of Review

When a court reviews a final decision by the SSA, it determines whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g); Roat v. Barnhart, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.) (citing Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982)). Substantial evidence amounts to "more than a mere scintilla" and it must reasonably support the decision maker's conclusion. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). A Court defers to the ALJ's decision if it is supported by substantial evidence "even if [the court] might have justifiably reached a different decision upon a de novo review." Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). The court should not uphold the ALJ's decision when there is substantial evidence, but it is not clear that the ALJ applied the correct legal standards. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). However, remand is unnecessary "where application of the correct legal principles to the

8

record could lead to only one conclusion." Id. A court may not "affirm an administrative action on grounds different from those considered by the agency." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citing SEC v. Chenery Corp., 332 U.S. 194 (1947)).

**B. Standard for Social Security Benefits**

According to SSA regulations, disability is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). However, an individual seeking disability benefits "need not be completely helpless or unable to function." DeLeon v. Sec'y of Health & Human Servs., 734 F.2d 930, 935 (2d Cir. 1984) (quoting Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 41 n.6 (2d Cir. 1972)).

In order to receive disability benefits, a claimant must satisfy the requirements set forth in the SSA's five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(1). In the first four steps, the claimant bears the burden of proof; at step five, the burden shifts to the SSA. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)). If the SSA is able to determine that the claimant is disabled or not disabled at any step, the evaluation ends. 20 C.F.R. § 404.1520(a)(4). Otherwise, the SSA will proceed to the next step. Id.

At step one, the SSA considers the claimant's current work activity to see if it amounts to "substantial gainful activity." Id. § 1520(a)(4)(i). If it does, the claimant is not disabled under SSA standards. Id. At step two, the SSA considers whether the claimant has a severe and medically determinable physical or mental impairment—or a combination of impairments that is

severe—that meets the duration requirement in 20 C.F.R. § 404.1509. Id. § 404.1520(a)(4)(ii). If he or she does not have such an impairment, the claimant is not disabled under SSA standards. Id. At step three, the SSA considers the severity of the claimant's medically determinable physical or mental impairment(s) to see if it meets or equals an impairment and the requisite duration listed in 20 C.F.R. pt. 404(P), app. 1. Id. § 404.1520(a)(4)(iii). If it meets one of these listed impairments and durations, the claimant is disabled.

If following step three, no disability determination has been made, the SSA must determine the claimant's RFC, meaning the most work the claimant is able to do given her impairments and other limitations. Id. §§ 404.1520(e), 404.1545. Then, under step four, the claimant is not disabled if the RFC reveals that the claimant can perform her past relevant work. Id. § 404.1520(a)(4)(iv). If the claimant cannot perform any past relevant work, the SSA decides whether adjustments can be made to allow the claimant to work somewhere in a different capacity. Id. § 404.1520(a)(4)(v). If appropriate work does not exist, the SSA considers the claimant to be disabled. Id.

## IV. DISCUSSION

### A. ALJ Kelly's Evaluation of Carter's Testimony

Carter argues that ALJ Kelly failed to adequately consider his testimony. Pl.'s Br. at 14. RFC refers to the work a claimant is capable of doing despite her limitations. 20 C.F.R. § 404.1545(a)(1). When determining RFC, the ALJ must consider all relevant evidence in the record, id., including information submitted about the claimant's symptoms and pain, id. § 404.1529(c).

The Social Security Commissioner has established a two-step inquiry for analyzing pain. Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir. 2010). First, the ALJ must consider whether the claimant suffers from a medically induced impairment that could produce the pain alleged. Id. (citing 20 C.F.R. § 404.1529(c)). Second, the ALJ must assess the intensity and persistence of the alleged pain in light of all the evidence. Id. If the objective medical evidence "could reasonably be expected to produce" the claimant's pain allegations, the ALJ must consider only the extent to which the pain affects the claimant's ability to work. Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d. 67, 81 (N.D.N.Y. 2005) (quoting 20 C.F.R. § 416.929(a)). But if the claimant's allegations are not supported by objective medical evidence, the ALJ must make a credibility determination. Id. at 81–82 (citing 20 C.F.R. § 416.929(c)(3)). In making a credibility determination, the ALJ must consider several factors. Id. (citing 20 C.F.R. § 416.929(c)(3)(i)–(vii))). These factors are:

> (i) [d]aily activities; (ii) [t]he location, duration, frequency, and intensity of [the] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) [t]he type, dosage, effectiveness, and side effects of any medication take[n] to alleviate [the] pain or other symptoms; (v) [t]reatment, other than medication, receive[d] for relief of [the] pain or other symptoms; (vi) [a]ny measures use[d] to relieve [the] pain or other symptoms; and (vii) [o]ther factors concerning . . . functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)–(vii). An ALJ's failure to consider each factor is grounds for remand. Barnwell v. Colvin, No. 13-CV-3683, 2014 WL 4678259, at *13 (S.D.N.Y. Sept. 19, 2014); Kane v. Astrue, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013) (collecting cases).

At the hearing, Carter testified about his pain and symptoms. R. at 17. Carter stated that it was difficult for him to put on socks and to twist his left hand, and that he is able to sit for only

11

twenty-five minutes at a time. Id. He reported using Naxoprene and Meloxicam for pain, which reduces his pain to a six on a scale of one to ten. Id.

ALJ Kelly concluded that Carter's testimony about his pain were "somewhat credible and consistent with his underlying medically determinable impairments." Id. Nonetheless, he concluded that the "intensity, persistence, and limiting effects of these symptoms [was] not entirely credible." Id. at 18. ALJ Kelly erred in his evaluation of Carter's testimony in several ways.

### 1. *Treating Physician Rule*

ALJ Kelly made a credibility determination and concluded that the objective medical evidence did not support Carter's claims about pain. Id. at 17. But in concluding that the objective medical evidence did not support Carter's testimony, ALJ Kelly discounted the findings of a treating physician without proper justification, thereby violating the treating physician rule.

Under the treating physician rule, the ALJ must give controlling weight to the opinion of a treating physician if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques." Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993) (quoting 20 C.F.R § 404.1527(c)(2)). But the report of a treating physician is not controlling if it is contradicted by substantial evidence in the record. Monguer v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983). The ALJ may choose between conflicting medical opinions that are supported by substantial evidence. Basalmo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998).

ALJ Kelly gave little weight to the October 2014 opinion of Carter's treating physician, Dr. Abraham. R. at 18. Instead, he gave significant weight to Dr. Puri's opinion. Id. But Dr. Puri

examined Carter only once in June 2014. Id. at 335. After examining Carter, Dr. Puri noted that Carter had no objective limitations to his gait or other activities of daily living. Id. at 336–37. Furthermore, Dr. Puri noted that Carter had 5/5 hand and finger dexterity with no limitations to fine or gross motor skills. Id. Dr. Abraham examined Carter in June and October 2014. Id. at 340, 344. While Dr. Puri found no objective limitations to activities of daily living, Dr. Abraham found that Carter had marked restrictions of his lumbar spine. Id. at 340. Dr. Abraham concluded that Carter had significant arthritis in his left hand and significant difficulty doing power grip activities on a regular basis. Id.

It is unclear if Dr. Puri's single exam constitutes substantial evidence that contradicts Dr. Abraham's opinion. Not all expert opinions provide enough evidence to contradict the opinion of a treating physician. Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). Furthermore, ALJs should be cautious about using the findings of a consultative examiner after a single visit to discount the opinion of a treating physician. Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013). But a consultative examiner's opinion may constitute substantial evidence in certain circumstances. Monguer, 722 F.2d at 1039. Accordingly, the Court will assume that the opinion of Dr. Puri constitutes substantial evidence contradicting the opinion of a treating physician. ALJ Kelly could choose to give Dr. Abraham's October 2014 opinion little weight because it is within an ALJ's discretion to choose between conflicting medical testimony that is supported by substantial evidence. Basalmo, 142 F.3d at 81.

But there is still the question of whether ALJ Kelly provided adequate reasons for giving Dr. Abraham's opinion little weight. If an ALJ decides not to give a treating physician's opinion controlling weight, then he must comply with certain regulatory requirements. 20 C.F.R.

13

§ 416.927(d)(2). First, the ALJ must consider several factors in determining what weight to give a treating physician's opinion. Id. These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993). The ALJ must explicitly consider all of these factors. Rolon v. Comm'r of Soc. Sec., 994 F. Supp. 2d 496, 507 (S.D.N.Y. 2014). An ALJ's failure to address all of these factors is legal error warranting remand. Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998). Additionally, the ALJ must provide good reasons for the weight she assigns to the treating physician's opinion. Smith v. Apfel, 69 F. Supp. 2d 370, 375 (N.D.N.Y. 1999). An ALJ's failure to provide good reasons for the weight she gives to a treating physician's opinion is also grounds for remand. Halloran, 362 F.3d at 33.

ALJ Kelly failed to consider the required factors when deciding how much weight to give to Dr. Abraham's opinion. ALJ Kelly did discuss two of the factors, the evidence in support of the treating physician's opinion, and the consistency of the opinion with the record as a whole. R. at 18. But he failed to consider the frequency and extent of the treatment relationship between Dr. Abraham and Carter. Id. Additionally, ALJ Kelly failed to discuss whether Dr. Abraham was a specialist. Id. Therefore, ALJ Kelly committed legal error warranting remand.

ALJ Kelly also failed to provide good reasons for the weight he gave to Dr. Abraham's opinion. Although he provided several reasons for giving little weight to Dr. Abraham's opinion, id. at 18, none of them withstand scrutiny. The Court will examine each in turn.

14

ALJ Kelly concluded that Dr. Abraham's October 2014 opinion was not entitled to controlling weight because the Commissioner is ultimately responsible for determining whether a claimant is disabled. Id. In Dr. Abraham's October 2014 exam, he listed Carter's work status as "100% disabled." Id. at 344. The Commissioner is responsible for determining whether a claimant is disabled. 20 C.F.R. § 404.1527(d)(1). Accordingly, a treating physician's statement that a claimant is disabled is entitled to little weight. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). But an ALJ must still provide good reasons for the limited weight given to a treating physician's other findings. Id. at 134 ("Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation . . . to explain why a treating physician's opinions are not being credited."). An ALJ need not provide any reason for giving little weight to a treating physician's claim of disability, id., but a treating physician's finding of disability is not a good reason for an ALJ to discount the entire opinion. Id. Therefore, ALJ Kelly's conclusion that Dr. Abraham's determination of disability is entitled to little weight is not in itself a good reason to disregard Dr. Abraham's whole opinion.

ALJ Kelly also gave Dr. Abraham's October 2014 opinion little weight because it was inconsistent with the overall record. R. at 18. ALJ Kelly claimed that Dr. Abraham's findings were internally inconsistent. Id. An ALJ may not reject a treating physician's opinion by making conclusory statements about inconsistency with the overall record. Marchetti v. Colvin, No. 13-CV-2581, 2014 WL 7359158, at *13 (E.D.N.Y. Dec. 24, 2014). Instead of simply making conclusory statements, an ALJ must attempt to reconcile inconsistent medical opinions. Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). When faced within inconsistent medical

opinions, the ALJ has an affirmative obligation to contact treating physicians to allow them to reconcile inconsistencies in the record. Rolon v. Comm'r of Soc. Sec., 994 F. Supp. 2d 496, 504 (S.D.N.Y. 2014). ALJ Kelly simply concluded that Dr. Abraham's opinion was inconsistent with the "overall record." R. at 18. Further, ALJ Kelly made no attempt to reconcile the alleged inconsistency by re-contacting Dr. Abraham. Therefore, ALJ Kelly's conclusory statement about inconsistency with the overall record was not sufficient to discount Dr. Abraham's October 2014 opinion.

Finally, ALJ Kelly gave Dr. Abraham's opinion little weight because it lacked clinical findings. Id. Dr. Abraham only said that Carter was unable to return to work "at this time" and did not provide a time frame for his return beyond "at this time." Id. Further, Dr. Abraham did not provide a function-by-function assessment of Carter. Id. An ALJ may not dismiss a treating physician's opinion based on a conclusory statement about the lack of clinical findings. Lopez-Tiru v. Astrue, No. 09-CV-1638, 2011 WL 1748515, at *4 (E.D.N.Y. May 5, 2011). An ALJ has an obligation to develop the record and address gaps in the treating physician's findings. See Calzada v. Astrue, 753 F. Supp. 2d 250, 278 (S.D.N.Y. 2010) ("[I]f a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with physician's other reports, the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion."). ALJ Kelly's conclusory statement about the lack of clinical findings is therefore not a legitimate reason to discount Dr. Abraham's October 2014 opinion.

Since ALJ Kelly did not provide good reasons for discounting Dr. Abraham's October 2014 opinion, he committed reversible legal error. Halloran, 362 F.3d at 33. Accordingly, on

16

remand, the ALJ must reconsider the weight given to the medical evidence and/or provide good reasons for the weight given in light of the treating physician rule.

### 2. Credibility Determination

After ALJ Kelly concluded that the objective medical evidence did not support Carter's testimony, he made a credibility determination. R. at 18. The only factor ALJ Kelly considered in his credibility assessment was the objective medical evidence. Id. After considering the medical evidence, ALJ Kelly concluded that Carter's claims about pain were not entirely credible. Id. But an ALJ can never reject a claimant's testimony about pain or other symptoms merely because they are not supported by objective medical evidence. 20 C.F.R. § 416.929(c)(2). Instead, the ALJ is required to consider the other factors outlined in the relevant regulations for determining the credibility of the claimant's testimony. Barnwell, 2014 WL 4678259, at *13. ALJ Kelly's failure to discuss the required factors is therefore grounds for remand. Kane v. Astrue, 942 F. Supp. 2d 301, 313–14 (E.D.N.Y. 2013) (collecting cases).

Accordingly, on remand, the ALJ must consider the factors outlined in 20 C.F.R. § 404.1529(c)(3)(i)–(vii) when determining Carter's credibility.

**B. New Evidence**

Carter also argues that ALJ Kelly's decision should be remanded because of the submission of new evidence. Pl.'s Br at 12. The Appeals Council will review a case if it receives new, material evidence and the plaintiff shows good cause for not submitting the evidence earlier. 20 C.F.R. §§ 416.1470(a)(5), (b). If the Appeals Council denies review after considering new evidence, the new evidence becomes part of the administrative record. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

On June 17, 2015, Carter requested that the Appeals Council review ALJ Kelly's decision. R. at 8. As part of his request, Carter submitted new evidence for the Appeals Council to consider. Id. at 5. On August 19, 2015, the Appeals Council denied Carter's request to review ALJ Kelly's decision. Id. at 1. In so doing, the Appeals Council considered the new evidence. Id. at 6.

Since this Court has already decided that ALJ Kelly's decision should be remanded based on other issues, the Court need not consider whether the Appeals Council was correct in its decision to deny review of Carter's case based on the new evidence. See Brown v. Apfel, 174 F.3d 59, 64–65 (2d Cir. 1999) (holding that the court did not need to consider additional issues because it already decided that remand was appropriate). Furthermore, since the new evidence is now part of the administrative record, the ALJ can consider the new evidence on remand. See 42 U.S.C. § 405(g).

**C. Substantial Evidence**

Finally, Carter argues that ALJ Kelly's RFC determination was not supported by substantial evidence. Pl.'s Br. at 14. As noted above, since the Court has already decided to remand the case, it need not address the substantial evidence argument. See Marsceill v. Colvin, No. 14-CV-797, 2015 WL 7573239, at *5 (W.D.N.Y. Nov. 25, 2015) ("[T]he court offers no opinion on these [additional] arguments at this time since the case is being remanded."); Golden v. Colvin, No. 12-CV-665, 2013 WL 5278743, at *7 (N.D.N.Y. Sept. 18, 2013) (declining to address any additional arguments because "the outcome of the case will not change whether they are sustained or rejected").

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the decision of the Commissioner is **VACATED and REMANDED** for further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: June 22, 2017
Albany, New York

Lawrence E. Kahn
U.S. District Judge